IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GTE FEDERAL CREDIT UNION,

                    Plaintiff,

v.

COMPANION PROPERTY & CASUALTY
INSURANCE COMPANY,

                    Defendant.

_____/

CASE NO.: _____

## **COMPLAINT**

Plaintiff, GTE FEDERAL CREDIT UNION, ("GTE CREDIT"), through the undersigned counsel, hereby seeks a declaration under the Florida Declaratory Judgment Act, Chapter 86, *Florida Statutes* that the Defendant, COMPANION PROPERTY & CASUALTY INSURANCE COMPANY'S ("COMPANION") mortgage guaranty insurance policy with GTE CREDIT has been validly terminated pursuant to the terms of that policy. In support thereof, GTE CREDIT states as follows:

### **GENERAL ALLEGATIONS**

#### **Jurisdiction & Venue**

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c) as there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as the actions at issue accrued within this district.

3.      All conditions precedent to the institution of this action have occurred, been waived or have otherwise been performed.

**Parties**

4.      At all times material to this action, Plaintiff GTE Credit has been a credit union organized and existing under the laws of the State of Florida, with its principal place of business in Tampa, Florida.

5.      At all times material to this action, Defendant Companion has been an insurance company organized and existing under the laws of the State of South Carolina, with its principal place of business in Columbia, South Carolina, and authorized to do business in Florida.

**FACTUAL ALLEGATIONS**

6.      On or about June 1, 2008, Companion issued an Equity Protection Policy, Policy No. EPP000026 to GTE Credit (the "Policy").  A true and correct copy of the Policy is attached hereto and incorporated herein as Exhibit A.

7.      The Policy indemnifies GTE Credit against certain losses it incurred with respect to any Home Equity Loan, Home Equity Line of Credit, Property Improvement Loan or Residential Lot Loan that were secured with a Mortgage or Deed of Trust.  The type of coverage provided by the Policy is commonly known as mortgage guaranty insurance.

8.      Pursuant to Section 10 of the Policy, GTE Credit, as the Insured, is permitted to cancel the Policy without cause by providing written notice to Companion stating when such cancellation shall be effective.

9.      Pursuant to Section 9 of the Policy, the terms of the Policy cannot be waived or changed without an endorsement or amendment signed on behalf of Companion by a duly authorized representative.

10.     On or about the time that the Policy was issued by Companion, GTE entered into a Service Agreement with Companion's managing underwriter and agent, Phoenix Underwriting Managers, LLC ("Phoenix"). A true and correct copy of the Service Agreement dated May 14, 2008 between GTE Credit and Phoenix (the "Service Agreement") is attached hereto and incorporated herein as Exhibit B.

11.     The Service Agreement requires Phoenix, as Underwriting Manager for Companion, to fulfill the services detailed in the Policy, insuring eligible loans against borrower default.

12.     Unknown to GTE Credit at the time, Phoenix was not licensed by the State of Florida to act as Companion's managing general agent, or in fact to perform any insurance functions or services in the State of Florida.

13.     Companion was never a party to, or signed, the Service Agreement. In fact, the Policy, which was issued by Companion, only referred to the Service Agreement for the premium rate that was to be charged to GTE Credit for administration of the Policy.

14.     The term of the Service Agreement was to continue until either the termination of the Policy or the Service Agreement as outlined in Section 10 of the Policy.

15.     Subsequently, GTE Credit and Phoenix entered into a second Service Agreement on June 22, 2009. A true and correct copy of the June 22, 2009 Service Agreement (the "Second Service Agreement") is attached hereto and incorporated herein as Exhibit C.

16.     Companion was not a party, nor did it sign, the Second Service Agreement.

\

17.     At the time GTE Credit and Phoenix executed the Second Service Agreement, Phoenix was not licensed as a managing general agent, or for any purpose, in the State of Florida; GTE Credit was not aware of this fact when the Second Service Agreement was executed.

18.     On or about February 3, 2010, GTE Credit and Phoenix entered into a third Service Agreement.  A true and correct copy of the February 3, 2010 Service agreement (the "Third Service Agreement") is attached hereto and incorporated herein as Exhibit D.

19.     Companion was not a party, nor did it sign, the Third Service Agreement.

20.     At the time GTE Credit and Phoenix executed the Third Service Agreement, Phoenix was not licensed as a managing general agent, or for any purpose, in the State of Florida; GTE Credit was not aware of this fact when the Third Service Agreement was executed.

21.     On May 17, 2010, Phoenix's successor, DGU Underwriting Insurance Associates, LLC ("DGU") became a licensed managing general agent in the State of Florida.

22.     As a result, on February 1, 2011, GTE Credit and DGU entered into a fourth Service Agreement. A true and correct copy of the February 1, 2011, Service Agreement (the "Fourth Service Agreement") is attached hereto and incorporated herein as Exhibit E.

23.     Again, Companion was not a party to, nor did it sign, the Fourth Service Agreement. Therefore, pursuant to Section 9 of the Policy, the Policy could not be deemed amended by the Fourth Service Agreement because, by the Policy's own terms, there was no written approval by Companion in the form of an endorsement or an amendment signed on behalf of Companion by a duly authorized representative.

## **GTE Credit Cancels the Policy**

24.    On or about January 23, 2012, GTE Credit sent its "Notice of Cancellation" to Companion.

25.    On February 16, 2012 a "Corrected Notice of Cancellation" was sent to Companion, the purpose of which was to correct the erroneous effective date of cancellation contained in the body of the original notice, while leaving the date of issuance of the letter the same.

26.    As seen in the text below, Section 10 of the Policy expressly permits GTE Credit, as the insured, to cancel the policy at any time by mailing written notice of cancellation to Companion stating the date the cancellation would become effective and also permits Companion to cancel by serving GTE with 30 days notice of cancellation:

> This Policy may be cancelled by the Insured by mailing to the company, written notice stating when thereafter such cancellation shall be effective. The Policy may be canceled by the Company by mailing to the Insured at the address shown on the Schedule or last known address, written notice stating when, not less than thirty days thereafter, such cancellation shall be effective. The mailing of such notice shall be sufficient proof of notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice by the Insured or by the Company shall be equivalent to mailing.

27.    Section 10 exclusively governs the issue of GTE Credit's right to cancel the Policy, and is neither trumped nor affected by any language in any of the three service agreements pertaining to termination.

28.    GTE Credit's cancellation of the Policy was made in good faith and in full compliance with Section 10 of the Policy.

29.    As a result of the cancellation of the Policy, GTE Credit cancelled the Fourth Service Agreement between GTE Credit and DGU.

\

30.     Notwithstanding, Companion has refused to honor GTE Credit's cancellation and has demanded that GTE Credit pay Companion more than $4,000,000.00 in additional "premium" as a consequence of GTE's cancellation of the Fourth Service Agreement and the Policy.

31.     GTE Credit has retained the undersigned counsel and is obligated to pay such counsel a reasonable fee for their services.

## COUNT I
## CLAIM FOR DECLARATORY RELIEF
## PURSUANT TO CHAPTER 86, *FLORIDA STATUTES*

32.     GTE Credit incorporates by reference the allegations contained in paragraphs 1 – 31 of the Complaint as if fully set forth herein.

33.     GTE Credit was entitled to, and did, validly cancel the Policy pursuant to its clear and unambiguous terms.

34.     Despite Companion's erroneous position to the contrary, the Fourth Service Agreement does not amend or alter the terms of the Policy, including the Section 10 of the Policy, which governs the cancellation of the Policy.

35.     Companion has refused to accept the cancellation of the Policy, and in fact, has demanded that GTE Credit pay Companion more than $4,000,000.00 in additional premium under the Fourth Service Agreement.

36.     In light of the foregoing, GTE Credit and Companion have actual, present, adverse and antagonistic interests either in fact or law.

37.     There is a bona fide, actual, present and practical need for a resolution of these interests, and a declaration of the respective rights of the parties under the terms of the Policy.

38.     Such declaration deals with a present, ascertained or ascertainable state of facts and/or present controversy as to a state of facts.

39.     GTE Credit is entitled to the declaratory relief sought in this action because, among other things, (i) there is a present controversy based on the facts alleged above; (ii) the rights of the parties are dependent upon the facts or the law applicable to the facts; (iii) Plaintiff and Defendant have actual present, antagonistic and adverse interests to each other, which are all before the Court by proper process; and (iv) the issues raised by Plaintiff are not propounded from curiosity and the relief sought is not for merely rendering legal advice by the Court.

WHEREFORE, GTE FEDERAL CREDIT UNION respectfully requests that this Court grant relief as follows:

(a)     Declare that GTE Federal Credit Union has terminated the Policy pursuant to the Policy's terms and conditions;

(b)     Award GTE Federal Credit Union the costs and attorneys' fees incurred in the litigation of this matter pursuant, as available under applicable law and the instruments; and

(c)     Award such other and further relief as this Court deems appropriate.

## JURY DEMAND

GTE CREDIT hereby requests a trial by jury on all issues so triable.

\

## NOTICE OF INTENT TO SEEK ATTORNEYS' FEES AND COSTS

GTE CREDIT hereby gives notice of its intent to seek attorneys' fees and costs under all

applicable statutory provisions.

Dated:  May ⎩⎩ , 2012

Respectfully Submitted,

ERIC S. ADAMS
Florida Bar No.: 0090476
WILLIAM P. CASSIDY
Florida Bar No.:0332630
SHUTTS & BOWEN LLP
4301 W. Boy Scout Boulevard, Suite 300
Tampa, Florida 33607
Telephone: (813) 229-8900
Facsimile: (813) 229-8901
eadams@shutts.com
wcassidy@shutts.com
Attorney for GTE Federal Credit Union

TPADOCS 19435618 2

8

\