# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**GTE FEDERAL CREDIT UNION,**

    **Plaintiff,**

**v.**                                              **Case No.  8:12-cv-1064-T-30TBM**

**COMPANION PROPERTY & CASUALTY**
**INSURANCE COMPANY,**

    **Defendant.**
_____/

# ORDER

THIS CAUSE comes before the Court upon Plaintiff GTE Federal Credit Union's Motion to Dismiss Counterclaim (Dkt. 29) and Defendant Companion Property & Casualty Insurance Company's Response in Opposition (Dkt. 32).  The Court, having reviewed the motion, response, and being otherwise advised of the premises, concludes that the motion should be denied.

## BACKGROUND

Plaintiff GTE Federal Credit Union ("GTE") filed this declaratory action against Defendant Companion Property & Casualty Insurance Company ("Companion"), seeking a declaration that GTE properly terminated the Equity Protection Policy (the "Policy") issued by Companion.  The Policy indemnified GTE against certain losses it incurred with respect to any Home Equity Loan, Home Equity Line of Credit, Property Improvement Loan, or Residential Lot Loan that were secured with a Mortgage or Deed of Trust.

Companion answered the complaint and counterclaimed for breach of contract and breach of the covenant of good faith and fair dealing, alleging that GTE breached the agreement between the parties by canceling the Policy without cause. Specifically, Companion issued the Policy to GTE in 2008. Companion alleges that the Policy and the Service Agreement entered into between Companion's representative and GTE constituted the agreement between the parties (the "Agreement").[1] The Policy itself does not state a premium rate but instead refers to a Service Agreement. Companion further alleges that the parties have acted in accordance with and performed under the Agreement for several years.

The most recent Service Agreement, dated February 1, 2011, changed the premium rate and included a rate structure that contemplated a 30-month term. The February 1, 2011 Service Agreement states: "The term of this Agreement will be effective for thirty (30) months beginning 2/1/2011 and running through 7/13/2013." (Dkt. 22-4). The Service Agreement also states: "[GTE] and [Companion] may not cancel this agreement without cause. In the event of cancellation both [GTE] and [Companion] must provide 30 days notification." *Id.*

GTE cancelled the Policy less than one year after signing the February 1, 2011 Service Agreement. Companion alleges that this purported termination was a breach of the Agreement because it was without cause. Companion alleges that the Policy and the

---

[1] Notably, the first Service Agreement between GTE and Companion's representative was entered into on May 14, 2008, near or around the same time that the Policy was issued. GTE and Companion's representative entered into subsequent Service Agreements, the most recent dated February 1, 2011.

February 1, 2011 Service Agreement constituted the Agreement between the parties, that GTE breached the Agreement by ceasing all premium payments and canceling the Policy without cause, and that the breach is material and has caused substantial harm to Companion. Companion also alleges a breach of the implied covenant of good faith and fair dealing.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

GTE moves to dismiss Companion's breach of contract claim under a number of theories that are either premature at this stage or belied by the contracts attached to Companion's counterclaim. For example, GTE argues that Companion is not a party to the Service Agreement and, as such, does not have standing to assert a breach of contract claim under the Service Agreement. At this stage this argument fails. First, Companion alleges

that it was a party to the Service Agreement.  Second, and most importantly, the Service Agreement states that it is entered into on behalf of Companion by Companion's authorized agent, DGU Insurance Associates, LLC.  The agency relationship between Companion and DGU is set forth on the first page of the Service Agreement, which states that DGU is the Underwriting Manager for Companion.  The Service Agreement states that "DGU, representing [Companion], will be responsible for processing payment of eligible claims made by [GTE] as per applicable conditions contained in the policy to [GTE] within specified timeframe as outlined in this agreement." (Dkt. 22-4).  As Companion points out, the Service Agreement also references Companion's obligations under the Service Agreement in numerous places, particularly with respect to termination of the Service Agreement.  Accordingly, this argument in favor of dismissal fails.

GTE then asserts that the express terms of the Policy and the Service Agreement require dismissal of the breach of contract claim.  GTE's arguments on this issue read like a summary judgment motion and include many superfluous points.  The Court, having reviewed each contract attached to Companion's counterclaim, cannot make a determination, at this stage, about the interplay between the Policy and the Service Agreement and whether they constitute one agreement, or separate and distinct agreements.  However, the Court can conclude at this stage that the express terms of the Policy and the Service Agreement do not expressly contradict or preclude Companion's breach of contract claim.  For example, the Policy refers to the Service Agreement and the Service Agreement refers to the Policy.  They were initially entered into at or near the same time in 2008.  The Service Agreement

contemplates that the premium rate will be reviewed and adjusted based on the portfolio performance.  Subsequent Service Agreements were executed over the years to make the adjustments in the premium rates desired by the parties.  Most notably, the Service Agreement states: "This Agreement constitutes the entire agreement, *together with the Policy*, between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written."  (Dkt. 22-4) (emphasis added).

Simply put, Companion's allegation that the Policy and the Service Agreement constitute one agreement between the parties is sufficient to state a claim at this stage and, contrary to GTE's contention, the documents do not clearly contradict Companion's position. Any further analysis of the documents would be inappropriate and premature at this stage. Accordingly, this argument in favor of dismissal fails.

GTE asserts similar arguments in favor of dismissal of Companion's claim of breach of the implied covenant of good faith and fair dealing, to wit, that the express terms of the Policy contradict and preclude the claim.  The Court need not re-address those arguments, which it has already determined are without merit at this stage.

With respect to whether the allegations are sufficient to state a claim of breach of the implied covenant of good faith and fair dealing, as both parties acknowledge, Florida law recognizes an implied covenant of good faith and fair dealing in commercial contracts.  And Companion alleges the express provision of the Service Agreement that was breached. Specifically, the counterclaim alleges that the Service Agreement contained a 30-month term

that allowed for early termination only for cause and GTE breached this express provision when it terminated the Agreement early and without cause.  Accordingly, this claim will not be dismissed.

It is therefore ORDERED AND ADJUDGED that:

1.     Plaintiff GTE Federal Credit Union's Motion to Dismiss Counterclaim (Dkt. 29) is DENIED.

2.     GTE shall file an answer to Companion's counterclaim within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on November 9, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-1064.mtdismisscc29.frm